**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 10-cv-00504-CMA-KMT

LANSE JUDSON,
MELANIE WESEMAN,
WESEMAN TEAM, INC., and
POINTS OF VIEW LLC,

      Plaintiffs,

v.

ADAM BLACK,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

      This matter is before the Court on Defendant Adam Black's Motion for Summary Judgment.  (Doc. # 116.)  Plaintiffs filed their Opposition (Doc. # 117), and Mr. Black did not file a Reply in Support of the instant Motion.  As explained below, the Court grants summary judgment as to all of Plaintiffs' claims, and this case is dismissed in its entirety.

## I.     BACKGROUND

### A.  PROCEDURAL HISTORY

      This Court granted Defendant's Motion for Judgment on the Pleadings in November of 2013, and instructed Plaintiffs that they would have 21 days to file an amended complaint.  (Doc. # 98.)  After requesting multiple extensions, Plaintiffs finally

tendered an Amended Complaint on January 9, 2014.  In their Amended Complaint,
Plaintiffs allege that Adam Black: (1) engaged in a civil conspiracy as defined by
Colorado law, and that as a result, Plaintiffs suffered damages; (2) breached a number
of contracts with the Plaintiffs between 2006 and 2008; (3) breached contracts for which
Plaintiffs were third-party beneficiaries; (4) breached the implied covenant of good faith
and fair dealing with respect to Plaintiffs' contracts; and (5) was involved in estate
transactions with the Plaintiffs that were based on fraud and misrepresentations.  (Doc.
# 104.)

## B. FACTS[1]

The events giving rise to the Complaint and Amended Complaint relate to real
estate transactions between the Plaintiffs, the Blacks, and companies both parties
owned separately or co-owned with third parties.  It is undisputed that Adam Black[2]
worked as an employee at two real estate investment firms, Garrett & Associates
("G&A") and Cross Mountain Group ("CMG"), both of which were owned by Plaintiff

---

[1] Although Defendant's Motion provides a statement of undisputed facts, most of these facts are
irrelevant for purposes of the instant Motion, because they describe a prior state court
proceeding involving Defendant and Plaintiff Lanse Judson.  Defendant provides these facts in
support of his contention that the findings made in that prior action represent a *res judicata* bar
to the instant lawsuit.  This argument fails, however, because the prior case involved both
different parties than the case at bar (including Melanie Weseman, Weseman Team, Inc., and
Points of View, Inc.) and different causes of action (the prior case involved a dispute over a
single promissory note, whereas this case involves an entirely different set of alleged
agreements).  *See Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (providing the
elements of a *res judicata* defense).  Unfortunately, because the facts provided by the
Defendant were so limited, the Court does not have the benefit of a full statement of undisputed
facts.  For the purposes of this Motion, the Court assumes that the facts provided in Plaintiffs'
Opposition brief are true, and concludes that Plaintiff's claims fail as a matter of law.

[2] Plaintiffs' Complaint brought claims against Adam Black's father, Robert Black.  Robert Black
has since been dismissed as a party.  For ease of reference, then, "Black" denotes Adam Black,
not Robert Black.

Mark Polunci.  (Doc. # 104 at ¶¶ 13, 14.)  Similarly, it is undisputed that Plaintiffs Melanie Weseman and Lanse Judson, along with their associated real estate investment firms (Weseman Team Inc. and Points of View LLC, respectively), were involved in real estate deals with Polunci's firms.  (*Id.* at ¶¶ 10, 11.)

In their Amended Complaint, Plaintiffs allege that Black breached multiple oral agreements[3] made between himself, Polunci, and Judson "between 2006 and 2008."[4] (*Id.* at ¶¶ 15-18, 42.)  The Amended Complaint alleges that these oral agreements provided that (1) Judson and/or Weseman would find real estate investment opportunities and bring them to the attention of Black, Polunci, and Polunci's companies; (2) Judson, Weseman and Black would analyze the potential real estate transactions to determine the best strategy; and (3) Black would subsequently close the real estate transactions.  (*Id.*)  Weseman and her real estate investment company were allegedly "intended third party beneficiaries" of these agreements.  (*Id.* at ¶ 18.)  In particular, Black was supposed to title seven real properties, with an equity value of $454,000, in the names of G&A or CMG.  (*Id.* at ¶ 20.)  Black allegedly failed to do so,

---

[3] Neither the Amended Complaint nor Plaintiffs' Opposition to the instant Motion provide the precise number of alleged agreements that were made, although both imply that more than one agreement was involved.  *See* (Doc. # 104 at ¶ 18) (stating that Weseman and her company were "intended third beneficiaries of **each agreement**"); (Doc. # 117 at 9) (noting that Mr. Black engaged in conduct that partially performed his obligations under the **oral agreements**") (emphasis added).

[4] The Plaintiffs provide both imprecise and seemingly contradictory information as to when the parties made these alleged agreements.  On the one hand, the Amended Complaint alleges that Black was employed and worked pursuant to the agreements "from **January 2005 through November of 2006** when he was terminated."  (Doc. # 104 at ¶ 16) (emphasis added).  On the other hand, it also alleges that "**Between 2006 and 2008** Plaintiffs entered into contracts with Defendants [sic] for the sale, purchase and financing of real property."  (Id. at ¶ 42) (emphasis added).

titling them in Black's own name or his father's name.  (*Id.*)  Black then allegedly

obtained second mortgages on these improperly titled properties and deposited the

proceeds in his own bank accounts or in the bank accounts of his own companies.  (*Id.*

at ¶ 52.)  Further, the Amended Complaint alleges that in 2006,[5] Polunci and Black

entered into an oral agreement whereby Polunci and G&A would pay Black and Black's

company proceeds from sales of (unspecified) properties, and Black, in turn, was to

make the mortgage payments on particular (unspecified) properties.  (*Id.* at ¶ 53.)

However, Black allegedly breached this agreement when he transferred those funds to

his personal bank accounts rather than making mortgage payments.  (*Id.* at ¶¶ 53, 54.)

Per the Amended Complaint, Mr. Judson, Points of View, LLC, Melanie Weseman, and

Weseman Team, Inc. were intended third party beneficiaries of this mortgage-payment

agreement.  (*Id.* at ¶ 54.)

The Amended Complaint also alleges that Black withdrew money from CMG's

and G&A's bank accounts and deposited this money into bank accounts in the names of

Black's own companies; that Black "shut down the funding" for CMG and G&A; and that

CMG's executive secretary, Susan McIntyre, made unauthorized payments to Black and

his father from CMG's and G&A's bank accounts.  (*Id.* at ¶¶ 23, 29-30.)

## II.   **LEGAL STANDARD**

This case is before the Court pursuant to diversity jurisdiction and the parties do

not dispute that Colorado's substantive law applies.  As such, the Court will apply

---

[5] Specific dates in 2006 were not provided.

Colorado substantive law to Plaintiffs' state law claims.  *Elec. Distribs., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir. 1999).

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing motions for summary judgment, courts must view the evidence in the light most favorable to the non-moving parties.  *Id.*  However, conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.  *Id.*  In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the non-movant then "must either establish the existence of a triable issue of fact under Fed. R. Civ. P. 56(e) or explain

why he [or she] cannot . . . under Rule 56(f)." *United States v. Simons*, 129 F.3d 1386, 1388-89 (10th Cir. 1997).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also* Fed. R. Civ. P. 56, Notes of Advisory Committee on Rules ("the very mission of the summary judgment procedure is to pierce the pleadings").    Rather, the nonmoving party must provide a plausible ground for her claim or defense, by setting forth "specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.; see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970) (internal citation omitted) (noting that it is "perilous" for the opposing party to fail to proffer any countering evidentiary materials nor file a 56(f) affidavit).

## III.    DISCUSSION

Defendant argues that he is entitled to summary judgment on Plaintiffs' breach of contract claim and other contract-related claims because Colorado's statute of frauds requires that any contract for the sale of land or interest therein must be in writing.  *See* C.R.S. § 38-10-108.  There is no dispute that the alleged oral agreements in this case were never reduced to writing.  Likewise, Plaintiffs do not dispute that the statute of frauds applies.  Rather, they assert that Black's partial performance of his obligations under the oral agreement(s) preclude application of the statute of frauds  pursuant to the partial performance exception.

The statute of frauds is "inapplicable where partial performance of an alleged oral agreement occurs." *Nelson v. Elway*, 908 P.2d 102, 116 (Colo. 1995); *see also Kiely v. St. Germain,* 670 P.2d 764, 769 (Colo. 1983) (holding that "a plaintiff's full or partial performance of an oral agreement, when done in reasonably justifiable reliance thereon, is sufficient to overcome a statute of frauds defense.")  The partial performance doctrine applies only when the partial performance is: "(1) **substantial**; and (2) required by, **and fairly referable to no other theory** besides that allegedly contained within the oral agreement." *Nelson*, 908 P.2d at 108 (emphasis added).  In *Nelson*, the Colorado Supreme Court explained that the partial performance rule "is based on the premise that the conduct constituting the partial performance must **convincingly evidence** the existence of the oral agreement." *Id.* at 109 (citing John D. Calamari & Joseph M. Perillo, Contracts § 19–15, at 799 (3d ed. 1987)) (emphasis added).

Plaintiffs, however, submit no evidence in favor of their Opposition to the instant Motion – for instance, they fail to submit a single affidavit from any of the Plaintiffs regarding the terms of any alleged oral agreements or any partial performance Black undertook.  Nor do Plaintiffs point to any evidence in the record establishing that Black partially performed to the extent necessary for their breach of contract claim to survive the statute of frauds defense.  Instead, Plaintiff's Opposition brief merely asserts that "Mr. Black engaged in conduct that partially performed his obligations under the oral agreements," and that "[h]e did so for a sufficiently long period of time that everyone believed that they were in business together and that everyone was doing their part to

achieve success."   (Doc. # 117 at 9.)   The entire proffered evidence of this "partial

performance" is as follows:

> Mr. Black worked at both Garrett & Associates and Cross Mountain
> Group.  He funded and closed real estate transactions. He handled the
> daily company operations both when Mr. Polunci was in town and when
> he was out of town on business.  He attended company meetings. He was
> a co-signer on the company bank accounts. Mr. Black performed an
> integral role in putting together the funding for Garrett & Associates and
> Cross Mountain Group.

(*Id.* at 9-10.)

Black's conduct, as outlined above, simply does not fulfill the requirements for

invocation of the partial performance doctrine, as it was both too insubstantial and too

ambiguous to demonstrate the existence of any oral agreement.  Importantly, the

parties agree that Black was an employee of G&A, such that Black's performance of his

daily job duties – i.e., his handling of daily operations when Polunci was out of town, his

attendance at company meetings, and his co-signer status as an employee – does not

constitute evidence of partial performance of an unwritten agreement to title very

specific real estate purchases in G&A's name, nor an unwritten agreement to make

mortgage payments for G&A, much less "substantial" evidence of such alleged

agreements.  (*See* Doc. # 104 at ¶¶ 14, 19) (describing how Black was given a position

at G&A and how his "job responsibilities" included "funding and closing real estate

acquisitions as well as sales. . . . [and] handl[ing] the daily company operations both

when Mr. Polunci was in town and when he was out of town on business," and that he

and Polunci "were signers on the [G&A] and [CMG] bank accounts," because "Mr. Black

needed access to the funds to purchase and repair real estate.")   The **only** fact as to

partial performance which arguably could support **any** contract here is that Black "funded and closed real estate transactions." However, this funding and closing of real estate transactions was also one of Black's job duties. *Id.*

Consequently, even assuming that the facts alleged in the Amended Complaint and the Plaintiffs' Opposition brief are true, Black's conduct was not "convincing evidence" of an oral agreement – it was very much consistent with his job duties. Thus, such conduct is far from being "fairly referable to **no other theory**" than that allegedly contained within the oral agreement. *See Nelson,* 908 P.2d at 108, 109 (emphasis added). Indeed, in *Nelson*, the Colorado Supreme Court held that far more substantial and concrete steps than those taken by Black here – selling automobile dealerships, selecting a corporate name, and providing information about a new incorporation to an attorney – were both too insubstantial and too ambiguous to trigger application of the partial performance doctrine. *Id.* at 109. Accordingly, the statute of frauds applies, and any alleged agreements are void and unenforceable, such that Plaintiffs' breach of contract claim fails as a matter of law – as do Plaintiffs' claims which derive from that breach of contract claim (i.e., their third-party-beneficiary breach of contract claim and their implied covenant of good faith and fair dealing claim).

Plaintiffs' remaining claims include a civil conspiracy claim and a fraud and misrepresentation claim.

To establish a claim for civil conspiracy in Colorado, a plaintiff must show that there were: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages

which are the proximate result thereof.  *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486,

502 (Colo. 1989).  The court will not infer the agreement necessary to form a

conspiracy; evidence of such an agreement must be presented by the plaintiff.  *Nelson*,

908 P.2d at 106.

In the Amended Complaint, Plaintiffs' civil conspiracy claim alleges that an

agreement existed between Black and his father, Robert Black, "to title . . . properties in

his own name and in Robert Black's name . . . [and] Adam Black did unlawfully title

those properties in his own name and in Robert Black's name."  (Doc. # 104 at ¶ 36.)

The Amended Complaint also alleges that "During 2006, Adam Black, Robert Black and

Susan McIntire agreed to withdraw large sums of money from the bank accounts of

Garrett & Associates and Cross Mountain Group. . . . As a result of the embezzlement

of those funds, Garrett & Associates, Cross Mountain Group, and Plaintiffs, again lost a

significant amount of money."  (*Id.* at ¶ 37.)

At a status conference on July 29, 2011 (prior to the amendment of the

Complaint), the Court informed Plaintiffs' counsel that, if she could not substantiate the

claims against Robert Black, the Court would consider imposing sanctions against her

and her clients.  That same day, Plaintiffs filed a Notice of Withdrawal of Claims against

Robert Black, based on "the Court's rulings during the status conference."  (Doc. # 56.)

Under these circumstances, the Plaintiffs' withdrawal of these claims indicates that they

did not have sufficient evidence to support their assertions that Robert Black was

involved in this alleged conspiracy, i.e., that Robert Black was involved in a conspiracy

with his son, or that he committed any unlawful overt acts in furtherance of the

conspiracy.  Similarly, Susan McIntyre is not a party to this case, and Plaintiffs have not submitted **any** competent summary evidence in opposition to Defendant's Motion to support an assertion that she was involved in an agreement or unlawful overt acts in furtherance of the alleged conspiracy.  *See Anderson*, 477 U.S. at 249 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)) (holding that a plaintiff may not "rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint.'")  Accordingly, because two or more persons are required to agree and to commit unlawful overt acts, and because Plaintiffs have failed to come forward with any evidence to support their allegations that either Robert Black or Susan McIntyre were involved in a conspiracy with Defendant, Plaintiffs' civil conspiracy claim fails as a matter of law.  *See Stauffer v. Stegemann*, 165 P.3d 713, 718 (Colo. App. 2006) (affirming denial of dismissal of civil conspiracy claim when a trial court found that plaintiffs failed to establish that another party participated in the alleged conduct); *Hawkinson v. A.H. Robins Co.*, 595 F. Supp. 1290, 1314 (D. Colo. 1984) (applying Colorado law and dismissing conspiracy claim because "There is only one defendant in this case, Robins, which for the purposes of the conspiracy claim is a single person.")

As for Plaintiffs' fraud and misrepresentation claim, this claim is barred by Colorado's economic loss rule, which provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004).  The rule attempts to maintain a boundary

between contract and tort law, and ensures that parties cannot convert an action for a breach of contract into an action for fraud by merely alleging reliance on representations under an express or implied contract.  As the Colorado Supreme Court has explained, "The essential difference between a tort obligation and a contract obligation is the source of the parties' duties.  Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property."  *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004) (internal citation omitted); *see also Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000) ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.  A breach of a duty arising independently of any contract duties between the parties, however, may support a tort action.")

In determining whether the economic loss rule applies, a court is to examine: (1) whether the relief sought in tort is the same as the contractual relief; (2) whether there is a recognized common law duty of care; and (3) whether the tort duty differs in any way from the contractual duty.  *See BRW, Inc.*, 99 P.3d at 74.

Plaintiffs' Amended Complaint alleges that Black made two misrepresentations.  First, Black allegedly "misrepresented to Mr. Polunci and Mr. Judson that once a short sale or foreclosure was completed, he would title each property in the name of [G&A] or [CMG].  He did not do so.  Instead, he titled those properties in his own name and/or his father's name," and "Mr. Polunci and Mr. Judson relied upon the misrepresentation and

were harmed as a result." (Doc. # 104 at ¶¶ 61, 62.)  Second, "[d]uring the summer of 2006, while representing to Mr. Polunci and Mr. Judson that [Black] was obtaining funding for [G&A] and [CMG], he was actually shutting down the funding," and that "[a]s a result of this conduct, Plaintiffs incurred damages." (*Id.* at ¶¶ 64, 65.)

These alleged misrepresentations are identical to (and grounded in) the basis of Plaintiffs' breach of contract claim; i.e., Plaintiffs allege that Black breached his contractual duties with them because he did not do as he agreed, and consequently, Black was **also** engaging in misrepresentation. (*Id.* at ¶¶ 42-45.)  Accordingly, the relief sought in Plaintiffs' fraud claim (benefit-of-the-bargain, money damages) is identical to the relief sought in their breach of contract claim. (*See id.*)  Additionally, the Complaint alleges that there was a contractual context between the parties which established the duty of care, and provides no evidence regarding a duty of care owed to Plaintiffs independent of the duties (i.e., the promises made) in the contract. *See BRW, Inc.*, 99 P.3d at 74 (holding that "If [a court] conclude[s] that the duty of care owed by [two contracting defendants] was memorialized in the contracts, it follows that the plaintiff has not shown any duty independent of the interrelated contracts and the economic loss rule bars the tort claim and holds the parties to the contracts' terms."); *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1270 (Colo. 2000) (holding that the economic loss rule applied in part because the duty of care was created by, and completely contained in, the contractual provisions).   Thus, the economic loss rule applies and bars Plaintiffs' fraud and misrepresentation claim because that claim arose from and was subject to the alleged contracts.

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 116) is GRANTED, and the case is DISMISSED with prejudice in its entirety, each party to pay its own fees or costs.

IT IS FURTHER ORDERED that the Final Trial Preparation Conference, set for May 1, 2015, and the three-day Jury Trial, set to commence May 18, 2015, are hereby VACATED.

DATED:  January 9, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge